```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ALABAMA
                              SOUTHERN DIVISION
```

RONALD L. PALMER,                )
                                 )
     Plaintiff                   )
                                 )
v.                               )     CIVIL ACTION NO.
                                 )
                                 )     CV 95-AR-2938-S
JEMISON STEEL,                   )
                                 )
     Defendant                   )

                              **MEMORANDUM OPINION**

The court has for consideration the alternative motion of defendant, Jemison Steel ("Jemison"), for j.n.o.v. or for new trial and two motions from plaintiff, Ronald L. Palmer ("Palmer"), the first to amend the judgment to reinstate him and the second for attorneys fees and expenses. For the reasons that follow, the court will deny Jemison's alternative motion and will grant Palmer's motions but stay their implementation pending any timely appeal by Jemison in the event it decides to appeal.

Palmer, who is black, obtained a jury verdict and judgment for alleged racial discrimination and retaliation by his employer, Jemison, as a result of Palmer's termination. As this court sees it, the only truly bothersome problem presented by the post-trial motions arises from two facts:

1.  Over Jemison's strenuous objection, the court allowed Palmer to elicit from Jemison's officials their admission that they

had used the term "nigger" outside the workplace and arguably used the term routinely outside the workplace. The said managerial employees denied ever having used the term <u>inside</u> the workplace, and Palmer offered no evidence from other witnesses, including himself, that the term had been used by managerial employees in the workplace. The context in which the pejorative term was used was not explored. The word could, for instance, have been used in an academic setting, although the court doubts it.

    2. The jury exceeded the statutory cap by awarding $250,000 in punitive damages against Jemison, indicating a strong emotional response by the jury and a desire to severely punish conduct which the jury found offensive.

The only reason this court allowed evidence of the use of a racially derogatory term outside the workplace by supervisory employees was that the remarks were made by decisionmakers. The court was persuaded by the footnote in *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 n.6 (11th Cir. 1990), where the Eleventh Circuit said:

> Alton also argues that Raymond's statement referred to *hiring* blacks, not promoting them, and that Diesen's statement didn't refer to the employment process at all. <u>Alton misses the point</u>. <u>The statements indicate a decidedly negative attitude toward black people on the part of the two people responsible for promotions</u>. There is no reason to think those attitudes differ from hiring to promotion.

(except for the word "hiring," emphasis supplied). While the Eleventh Circuit's expression in *Alton Packaging* can be

2

distinguished by the fact that there is no indication <u>where</u> the statements were made, and the expression may not have been necessary to the decision in that case, at the time this court ruled on the evidence offered by Palmer, the footnote convinced this court that <u>any</u> statement that may be said to "indicate a decidedly negative attitude toward black people" by a decisionmaker who participates in a decision thereafter adversely affecting a black employee is relevant and probative. The balancing test in Rule 403, F.R.E., was invoked by Jemison, but the court implicitly found that the danger of unfair prejudice, if any, did not outweigh the probative value of the evidence. The court now harbors serious doubts about its evidentiary ruling, although it would be after-the-fact speculation to say what the court would have done with the balancing test if it had taken more time before ruling. The predominant question is, "Was the evidence relevant?"

Palmer's brief, submitted in reply to Jemison's post-trial motion, says, *inter alia*:

> <u>Even without the evidence of the routine use of racially derogatory language</u>, there was adequate circumstantial evidence on which a reasonable jury could conclude that Mr. Palmer was terminated because of management irritation over his complaints regarding the treatment of black employees, including himself, and because of his race.

(emphasis supplied). The court agrees with this statement, but the statement does not meet the question of whether Palmer's evidence of "routine use of racially derogatory language" was so remote as

3

to be irrelevant on the core issue to be decided by the jury. It is difficult, of course, to separate, with or without a Rule 403 analysis, the question of "relevance" *vel non* with the question of "prejudicial effect."

A recent case from the Seventh Circuit reflects how far one court would go to find that racially offensive activity, even in the workplace, is insufficient to establish a basis in direct evidence for employer liability under Title VII and/or § 1981. In *Oates v. Discovery Zone*, __ F.3d __, 1997 WL 342883 (7th Cir. Jan. 23, 1997), the Seventh Circuit found that a supervisor who posted a magazine advertisement picturing four monkeys, even though she kept it posted after a black employee complained, and even though she told the black employee that he was being "overly sensitive," did not provide enough evidence to get the subsequently terminated black employee past his employer's motion for summary judgment. The Seventh Circuit cited *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S. Ct. 1553, 1593 (1968), for the proposition that a plaintiff cannot rest on his allegations to get to a jury without "any significant probative evidence tending to support the complaint." In other words, the Seventh Circuit was finding that the "monkey picture" was not "significant probative evidence." Plaintiff had argued that the "monkey picture" showed that his supervisor was biased against him because of his race. Judge Wood concurred in part and dissented in part, but the Seventh

4

Circuit majority held:

> Therefore, a plaintiff's so-called "direct evidence" need not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question.

(emphasis supplied). It is obvious that the extraneous use of the racially derogatory term by Jemison's supervisory employees did not "relate to the specific employment decision in question." This court, of course, is not bound by the Seventh Circuit but by the Eleventh Circuit which has not as yet spoken on this precise question unless by implication in the *Alton Packaging* footnote.

Palmer relies upon *Mullen v. Princess Anne Volunteer Fire Dept.*, 853 F.2d 1130, 1134 (4th Cir. 1988), for the proposition that the use of racially offensive language by a decisionmaker is relevant to whether racial animus was behind a subsequent decision by that decisionmaker. *Mullen* is quickly distinguishable and inapposite. First, it involved a trial court's exclusion of such evidence, after which a jury rendered a verdict in favor of the employer and the trial court was affirmed despite the trial court's error. Second, and much more important, the routine use of racial slurs in *Mullen* occurred, for aught appearing, within the workplace. The "state of mind" of a person in his own living room or at a lodge meeting and his "state of mind" at the plant or in the office may very well not be the same thing. The context must be made known. Different contexts may make the remark relevant in one and irrelevant in another.

5

This court without much hesitancy will deny Jemison's motion for j.n.o.v. With mounting doubt it will also deny Jemison's motion for a new trial based on the evidentiary ruling discussed above. The court looks forward to a ruling by the Eleventh Circuit on the evidentiary question.

A separate, appropriate order will be entered.

DONE this 11th day of August, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE